Lours G. Bruhít, J.
This is a motion on behalf of the defendant for summary judgment dismissing the complaint of the plaintiff herein.
The action is one in which the plaintiff, as surviving widow of the decedent, seeks to recover the proceeds (including double indemnity for accidental death), of a life insurance policy which had been applied for but had not been issued.
However, it appears that on January 9,1960, five days before his death, the defendant had delivered to the decedent its binding receipt No. FP 873 following the payment by the decedent of a quarterly premium of $24.11.
Such receipt provided in part: “ first — If a full premium in accordance with the published rates of the Company for the form of policy applied for has been paid at the time of making such application and declaration of such payment is made therein, the insurance, subject to the terms and conditions of the policy contract applied for and in use by the Company at this date, shall take effect on the date hereof provided: * * * (2) the required and completed application and any medical examination, and such other information as may be required by the Company are received by the Company at its Home Office, (3) the applicant, his wife, and all dependent children proposed for coverage are on this date risks acceptable to the Company under its rules, limits and standards, on the plan and for the amount applied for and at the rate of premium declared paid, and (4) the applicant, his wife, and all dependent children proposed for coverage are on this date in good health.”
The application, executed on the same date, provided, among other things, the following: “ 1. The application, any amendment thereto, any supplement thereto and any medical examination, also designated as part of the application for insurance, required by the Company on the proposed insured, his wife or any dependent child now proposed for coverage shall become a part of the policy hereby applied for.”
The defendant company now resists payment under the policy to be issued on two grounds:
(1) That the decedent at the time of his application was not in good health and was not a risk acceptable to the defendant under its rules, limits and standards, and
*770 (2) That the decedent misrepresented the true condition of his health by false statements and representations which were material.
Rule 113 of the Rules of Civil Practice provides in part: “ The motion shall be granted if, upon all the papers and proof submitted, the * * * defense shall be established sufficiently to warrant the court as a matter of law in directing judgment, interlocutory or final, in favor of any party.” (Italics supplied.)
Such rule obviously places the burden of this motion on the defendant.
The primary proof submitted by the defendant is an affidavit by the manager of the underwriting department of the defendant company, who concludes, after reciting his opinion why certain answers given by the decedent in his application, were false, that: “ For the reasons mentioned above Mr. Bovia was not a standard risk subject to the standard rate, and, therefore, would not be considered ‘ in good health ’ as said term is used in the receipt. ’ ’
Such ‘ ‘ proof ’ ’ hardly satisfies the quantum required by the rule.
In a recent case Bronx Sav. Bank v. Weigandt (1 N Y 2d 545, 549) the court stated: “ A representation as to good health in an application for insurance, such as the one quoted above, is not an affirmation of fact and does not provide a basis for rescission in the absence of proof of actual fraud. ’ ’
Furthermore, in the case of Sommer v. Guardian Life Ins. Co. (281 N. Y. 508) cited with approval in the Bronx Sav. Bank case (supra) the court, at page 514, stated: “ The representation cannot reasonably be understood as intended to do more than convey to the company such information as the applicant might be expected to have and to give to the company assurance that the applicant has had no symptom of disease which would, ordinarily, act as a warning or notice, even to a layman, that his health might be impaired in substantial degree, and assurance that the applicant, in good faith, believes that he is in fact a well person. Even statements of good health or freedom from disease which are made in the form of a warranty are usually construed merely as representations and statements of opinion, since it is plain that the insured or applicant cannot speak with positive knowledge.” (Italics supplied.)
Therefore, in view of the foregoing, and even considering the copies of the medical records submitted, this court does not feel that the defendant, as a matter of law, has established that the *771 decedent was not in good health at the time of making his application.
The second phase of the first defense deals with the question of whether or not the decedent was a risk acceptable to the defendant under its rules, limits and standards.
Again the proof submitted on that proposition by the defendant is the afore-mentioned affidavit of its manager.
In paragraph ‘ ‘ 3 ” thereof he states:
“3. If Edmund Bovia had given the correct answers to the questions asked on the application, the Patriot Life Insurance Company would have obtained his hospital record and would have referred Bovia to a physician for a physical examination. Even if the results of that examination had proved negative in all respects, Mr. Bovia would not have been issued a policy at the standard premium rate for which he applied, to wit, $24.11. On the basis of his past medical history and ulcer condition his rating would have been a ‘ D ’ Bating which would have required an additional quarterly premium of $8.12 making Mr. Bovia’s quarterly premium $32.23 instead of $24.11 which was the amount he applied for and which was the amount he paid for as his first quarterly premium. In addition, the policy would have only been issued to Mr. Bovia with the waiver of premium and double indemnity provisions deleted.
‘ ‘ For the reasons mentioned above Mr. Bovia was not a standard risk subject to the standard rate and, therefore, would not be considered ‘ in good health ’ as said term is used in the receipt.”
Such a self-serving and conclusory statement of the manager unfortified by rules, manuals or past experience, again hardly satisfies the quantum requirement either of the rule or of subdivision 3 of section 149 of the Insurance Law. (Lindenbaum v. Equitable Life Assur. Soc., 5 A D 2d 651.)
Furthermore, such language does not negate the fact that, even under its company policy, taking into account the instant facts, it would not have issued a limited policy.
In view of such concession on the part of the defendant, the argument, constituting the second defense, that such alleged misrepresentations were material as a matter of law is rather specious.
It would appear far more convincing on that point if, as a matter of fact, a complete refusal of any policy was the rule of the company in cases involving misrepresentations of similar import.
*772 In the context of these facts it is the conclusion of this court that this is a case that involves a question of fact rather than one of law as to the materiality of the alleged misrepresentations.
To hold otherwise would certainly strain the construction which the courts have placed on subdivisions 2 and 3 of section 149 of the Insurance Law. (Giuliani v. Metropolitan Life Ins. Co., 269 App. Div. 376; Ranellucci v. John Hancock Mut. Life Ins. Co., 200 Misc. 1111.)
This court cannot agree that the case of Stone v. Prudential Ins. Co. (268 N. Y. 91) is decisive of this motion since such case involved an appeal where the material elements found lacking in proof in this case had been established after trial in that one.
For the reasons stated, the defendant’s motion is denied, with costs of $10 to the plaintiff.